ELIZABETH KENDALL vs. EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES & others.

Suffolk.    January 25, 1898. — August 30, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Life Insurance — Equity — Appeal — Assignment — Husband and Wife —
Suretyship — Guaranty — Promissory Note — Payment — Law and Fact
— Finding — Pledge — Redemption.*

If requests for rulings are in the alternative, and a decree is entered in accordance
with one of them, and both parties appeal therefrom, upon a report of the case,
all questions of law are open.

Where a policy of insurance provides that, if the assured is alive on a certain day,
and the policy has not been terminated by lapse or his death, he has the option,
first, to withdraw in cash the policy's entire share of the assets of the company,
and also the surplus apportioned by the company, or, secondly, to convert the
same into a paid up policy, and the assured and his wife, who is the beneficiary,
assign absolutely their interest in the policy, guaranteeing the sufficiency of the
assignment as security for the payment of a debt evidenced by a promissory
note given by him, which is afterwards renewed without her knowledge, the
contract of the wife is not one of suretyship; and although the guaranty con-
tained in the assignment may have been lost by the giving of time, it does not
affect the legal consequences of the assignment.

It cannot be said, as matter of law, that a promissory note given for the amount of
a debt has been paid by the giving of a second note, but whether the latter oper-
ated as such payment is a question of fact depending on the intention of the
parties and the other circumstances attending the transaction.

A. borrowed $1,900 of B., and gave his promissory note therefor payable in six
months from date, with interest after maturity at the rate of two per cent a
month, and A. and his wife, who was the beneficiary, assigned to B. their inter-
est in a policy of insurance on A.'s life. Upon A.'s failure to pay the premiums
on the policy, they were paid by B. The note was not paid at maturity, and A.
gave B. a new note for the amount of the first note and interest, and the amount
of the premiums paid by B., with interest at the rate of two per cent a month,
reciting the assignment of the policy as collateral security therefor. After A.'s
death, his wife brought a bill in equity to redeem the policy, and the judge
found that she never consented that the policy should be pledged to B. as secu-
rity for any debt other than "the note of $1,900 and interest thereon"; and
that she had no knowledge or notice that B. claimed to hold the policy as
security for any debt other than the "original debt of $1,900 and interest
thereon" until after her husband's death, and did not authorize him to pledge
it for any other debt. *Held*, that the finding was to be construed as a finding
that the plaintiff pledged her interest in the policy as security for the original
debt, and not for the original note.

The fact that an assignment by a husband and wife of their interest in a policy of

insurance is absolute in form is immaterial, and the consideration and purpose of the transaction may be shown by oral evidence.

If a policy of insurance is pledged as security for the debt of the assured, and the pledgee pays the premiums in order to keep the policy alive, the beneficiary, who joined with the assured in pledging the policy, is entitled to redeem the policy only upon paying, in addition to the amount of the debt with interest thereon, the amount of the premiums paid by the pledgee, with interest from the time of each payment.

BILL IN EQUITY, filed July 29, 1897, in the Superior Court, against the Equitable Life Assurance Society of the United States, a corporation, Frank A. Russell, individually and as trustee, and the executors of the will of Daniel W. Russell, for the redemption and reassignment to the plaintiff of a policy of insurance. Hearing before *Richardson,* J., who found the following facts.

On or about September 29, 1893, Josiah B. Kendall, whose life was insured in the defendant corporation, borrowed for his own use of Daniel W. Russell the sum of $1,900, and gave his note therefor payable in six months from date, with interest after maturity at the rate of two per cent per month.

The policy was issued on July 29, 1882, by which the company promised to pay to the plaintiff, who was the wife of Kendall, for her sole use if living, and, if not living, to his children, or, if there were no children living, to his executors, administrators, or assigns, the sum of $10,000 ; and contained the following provision : " That upon the completion of the tontine dividend period, on July 25, 1897, provided this policy shall not have been terminated previously by lapse or death, the said Josiah B. Kendall shall have the option either, first, to withdraw in cash this policy's entire share of the assets, i. e. the accumulated reserve, which shall be thirty-five hundred and thirty-five $\frac{40}{100}$ dollars, in addition thereto the surplus apportioned by this society to this policy; secondly, to convert the same into a paid up policy for an equivalent amount."

On the same date, September 29, 1893, an assignment of the policy was made by the plaintiff and her husband to Frank A. Russell, trustee for Daniel W. Russell, of all their right, title, and interest in the policy, guaranteeing the validity and sufficiency of the assignment. The premiums upon the policy were payable quarterly, and upon the failure of Kendall to pay the pre-

miums, Daniel W. Russell paid the premiums which became due in October, 1893, and in January and April, 1894; and thereafter, in June, 1894, Kendall having failed to pay the note for $1,900 at maturity, and also to pay the premiums so paid by Daniel W. Russell, entered into an agreement with the latter by which a new note was given by Kendall for the amount of the first note and interest, and the amount of the three premiums paid by Russell, which new note bore interest at the rate of two per cent per month, and recited that the assignment of the policy of insurance was held as collateral security therefor; and the original note of $1,900 was given up to Kendall. When the new note became due, Kendall and Russell agreed that another note should be given by Kendall in substantially the same form, the principal of which should be made up by computing the interest at the rate named in the existing note, namely, two per cent per month, adding thereto the amount paid for the quarterly premiums and the principal sum of the existing note, which new note should recite that the insurance policy was collateral security for the new note, in the same manner as provided by the original note. Russell thereafter paid all the premiums upon the policy quarterly, after demanding of Kendall that he should pay the same, and took new notes quarterly from time to time, made up in the manner above set forth, until the death of Russell, in 1895; and after his death the executors of his will, having made demand on Kendall for payment of the sum then due, continued to take his new notes quarterly at the same rate of interest, and pay the premiums to the insurance company, and each new note recited that the assignment of the policy to Frank A. Russell, trustee, was collateral security for the payment of the note, until April, 1897, when the last note was given, which was payable on demand, with " interest at the rate of two per centum per month for such further time as said principal sum or any part shall remain unpaid," and recited that the policy was deposited as collateral security.

Kendall died in June, 1897. Neither the defendants nor Daniel W. Russell in his lifetime, ever saw the plaintiff about this matter, or had any communication or dealings with her therein, and were ignorant as to any representations that were made to her by her husband, or by her to him, in respect to the

assignment of the policy, and were also ignorant of the fact, " which I find as a fact, that she did not ever consent or agree that the policy should be pledged or held by said Russell as security for any debt other than the note of $1,900 and interest thereon. She had no knowledge or notice that the said Russell claimed to hold said policy as security for any debt other than the original debt of $1,900 and interest thereon, until after the death of said Josiah B. Kendall, nor did she authorize her husband to pledge it for any other debt."

The plaintiff contended, first, that, upon the foregoing facts, she was entitled to a reassignment of the policy without paying any amount to the defendants or any of them ; secondly, that, if she was liable to pay anything to redeem the policy, she was entitled to an assignment upon paying the aggregate amount of the quarterly premiums paid by Russell, together with interest thereon from the date of the payment thereof, at six per cent per annum ; or, thirdly, that in no event was she bound to pay more than the amount of the original loan with interest at six per cent and the quarterly premiums, with interest thereon at six per cent per annum from the date of payment.

The defendants contended that they were not bound to reassign the policy except upon payment to them of the full amount of the last note given by Kendall. The amount of this note was made up from the original loan of $1,900, together with interest thereon at the rate of two per cent per month, compounded quarterly from the date of the maturity of the loan, together with the amount of the quarterly premiums, with interest on each amount from the date of its payment at two per cent per month compounded quarterly. The defendant corporation is willing and ready to pay the amount of the policy to the person or persons entitled to the same.

The judge ruled, on these facts, that the plaintiff was entitled to a reassignment of the policy on payment to the defendant executors of the amount of the original loan, with interest at the rate of six per cent since the date of that loan, and the amount of all the premiums paid by Daniel W. Russell or his estate, with interest on each premium from the date of the payment of it to the date it was repaid, at the rate of six per cent per annum ; and ordered a decree to be entered accordingly. Both

the plaintiff and the defendants appealed therefrom; and thereupon, at the request of all the parties, the judge reported the case for the determination of this court.

*S. L. Whipple,* ( *W. R. Sears* with him,) for the plaintiff.

*R. M. Morse & E. M. Johnson,* for the defendants.

LATHROP, J.   The defendants other than the assurance society contend that, as the justice who heard the case decided it in favor of the plaintiff's third contention, she is not a party aggrieved, within the Pub. Sts. c. 151, § 13, and has no right of appeal.   For this position *Copp* v. *Williams,* 135 Mass. 401, and *Downs* v. *Bowdoin Square Baptist Society,* 149 Mass. 135, are cited.   These cases state the familiar rule that, if a party asks for a certain ruling and it is given, he has no ground of exception.   But the contentions in the case before us were in the alternative, and the plaintiff would not be precluded from arguing the correctness of the other contentions, if the case came here on exceptions.   The case is here on a report, after an appeal by both parties, and all questions of law are open.

The first contention of the plaintiff is that on the facts of the case the plaintiff is entitled to a reassignment of the policy without paying any amount to the defendants or any of them. The argument in support of this contention is that the contract on the part of the wife was one of suretyship, and that the note was paid by the renewal of it without her knowledge.   We are of opinion, however, that the wife did not stand in the relation of a surety to her husband.   Both she and her husband at the time of the assignment had an interest in the policy.   By its terms, on July 25, 1897, provided the policy had not been terminated by lapse or by his death, he had the option, first, to withdraw in cash the policy's entire share of the assets of the insurance society, namely, the accumulated reserve, which was expressed to be $3,535.40, and in addition thereto the surplus apportioned by the insurance society; or, secondly, to convert the same into a paid up policy.   The interest of the wife was contingent upon her husband's death before July 25, 1897. Each could assign his or her interest.   But neither could assign the interest of the other, or defeat it in any way.   The fact that it was payable to him in a certain contingency, which did not happen, is immaterial.   *Pingrey* v. *National Life Ins. Co.* 144 Mass. 374, 383.

The husband and wife having these interests in the policy, the husband wished to pledge it for his debt, and obtained the assignment of the policy by the wife, absolute in form.   We see in this alone no contract of suretyship.   While the guaranty contained in the assignment may have been lost by the giving of time, it does not affect the legal consequences of the assignment.

We are also of opinion that the note given for the original debt cannot, as matter of law, be said to have been paid by the second note.   Whether this note operated as payment of the first note was a question of fact, depending on the intention of the parties and the other circumstances attending the transaction.   *Agawam National Bank* v. *Downing*, 169 Mass. 297.

The plaintiff's second contention in the court below was, that, if she was liable to pay anything to redeem her policy, she was entitled to an assignment upon paying the aggregate amount of the quarterly premiums paid by the Russells, together with interest thereon from the date of the payment thereof at six per cent per annum.   The third contention was, that in no event was she bound to pay more than the amount of the original loan with interest at six per cent and the quarterly premiums, with interest thereon at six per cent from the date of payment.   The judge entered a decree in favor of the plaintiff, based upon her third contention.

The findings of fact do not make it entirely clear whether the plaintiff pledged her interest in the insurance policy as security for the original debt or for the original note.   The judge finds as a fact " that she did not ever consent or agree that the policy should be pledged or held by said Russell as security for any debt other than the note of $1,900, and interest thereon.   She had no knowledge or notice that the said Russell claimed to hold said policy as security for any debt other than the original debt of $1,900, and interest thereon, until after the death of said Josiah B. Kendall, nor did she authorize her husband to pledge it for any other debt."   The note was for $1,900, payable six months from date, with interest after maturity at the rate of two per cent a month.   This was a legal contract by the plaintiff's husband, who signed it.   Pub. Sts. c. 77, § 3.   He at least was bound to pay the interest stipulated until payment or until

the claim for principal and interest was judicially determined. *Brannon* v. *Hursell,* 112 Mass. 63. *Union Institution for Savings* v. *Boston,* 129 Mass. 82. *Lamprey* v. *Mason,* 148 Mass. 231. *French* v. *Bates,* 149 Mass. 73, 79. *Handy* v. *Tracy,* 150 Mass. 524. *Schmidt* v. *People's National Bank,* 153 Mass. 550. *McDonald* v. *Faulkner,* 154 Mass. 34.

If, therefore, the finding of the judge is to be construed as a finding that the plaintiff pledged her interest in the policy as security for the note, a different rate of interest should have been allowed. But we do not so construe the finding. The latter part of the finding refers directly to the original debt, and the decree is based upon this finding.

The next question is as to the effect of the assignment of the policy, which was in form absolute. If the only authority which the wife gave the husband was to pledge her interest in the policy for the original debt, he was not her agent either to make the original note in the form in which it was made, or to make new notes; and the fact that the assignment was absolute in form is immaterial. The consideration and the purpose of the transaction could be shown by oral evidence. *Riley* v. *Hampshire County National Bank,* 164 Mass. 482, 486.

The first part of the decree was, therefore, right.

The remaining question is as to the correctness of the last part of the decree, which obliges the plaintiff to repay the amount of all the premiums paid by Daniel W. Russell or his estate, with interest on each premium from the date of its payment to the date of repayment, at the rate of six per cent per annum.

We are of opinion that the decree in this respect was right. The plaintiff joined in pledging the property as security for a debt. The pledgee had to pay the premiums in order to keep the policy alive. We have already said that she must pay the debt with simple interest thereon; and it is only equitable that she should repay the premiums paid by the pledgee, with simple interest from the time of each payment. This is not the case of a mere volunteer paying the premiums, or the part owner of a policy, as in *In re Leslie,* 23 Ch. D. 552. Nor is it the case of a payment made by a mortgagor to preserve the property, as in *Falcke* v. *Scottish Imperial Ins. Co.* 34 Ch. D. 234. It is the case of a payment by a pledgee, who had a right, as against the

pledgor, to keep the pledge alive. See *Warnock* v. *Davis*, 104 U. S. 775; *Scobey* v. *Waters*, 10 Lea, 551; *Harley* v. *Heist*, 86 Ind. 196; *Raley* v. *Ross*, 59 Ga. 862.                    *Decree affirmed.*