FEDERAL DEPOSIT INSURANCE COR-
PORATION, Receiver of Penn Square
Bank, N.A., a national banking associa-
tion, Appellee,

v.

J. Patrick CASEY, an individual, John
Carl Wood, an individual, Nancy E.
Wood, an individual, Appellants.

No. 62858.

Supreme Court of Oklahoma.

July 21, 1987.

Joe E. Edwards and Stephen J. Moriarty,
Edwards, Roberts & Propester, Oklahoma
City, for appellee.

Mark W. Kuehling, Lamun, Mock, Feath-
erly, Baer & Timberlake, Oklahoma City,
for appellants.

464

SIMMS, Justice.

This appeal presents a single issue: Did the trial court err in denying appellant's motion to release judgment under the provisions of 12 O.S.Supp.1983, § 706.B,[1] on the grounds that the confirmed plan of reorganization approved by a bankruptcy court did not constitute satisfaction of a state court judgment entered against the individual appellants.

## I.

In 1981, the Casey Wood Company, a general partnership consisting of appellants, J.P. Casey, J.C. Wood, N.E. Wood, executed promissory notes to the Penn Square Bank. Appellants also signed individual guaranty agreements for the indebtedness of the Casey Wood Company to the Penn Square Bank.

In 1983, the FDIC (Appellee) as the Receiver of Penn Square Bank commenced foreclosure proceedings against the Casey Wood Company for default on the partnership's promissory notes. In addition, the FDIC sought judgments against the appellants on the basis of their individual guaranty agreements relating to the partnership debt.

The FDIC was stayed from foreclosure of the partnership debt when the Casey Wood Company successfully filed for relief under the Bankruptcy Code. The Bankruptcy Court approved a plan of reorganization for the Casey Wood Company, over the objections of the appellee. The court ordered reinstatement of the original terms of the promissory note after curing the default and payment of the arrearages due by the partnership.

FDIC was granted summary judgment against the appellants to enforce the individual guaranty agreements. The FDIC recovered judgment for the entire accelerated balance due under the notes with interest at a default rate.

## II.

Appellants allege that a single debt is owed to appellee, even though the partner-

ship and the individual partners as guarantors, are liable for payment of that debt. Appellants contend that the nature and extent of the indebtedness was reflected in the confirmed plan of reorganization as a single debt that was reinstated and cured by the Bankruptcy Court.

Appellants maintain the objectives of the Bankruptcy Code do not require individual partners to file separately for bankruptcy in order to obtain a discharge for themselves. In support of their position, appellants rely on *Matter of Consolidated Motor Inns*, 632 F.2d 1178 (5th Cir.1980), for the proposition that a plan of reorganization for a partnership contemplates relief for both the partnership and the individual partners.

As the appellee correctly notes the *Matter of Consolidated Motor Inns*, supra, was decided under the "old" Bankruptcy Act and has since been vacated. See: 666 F.2d 189 (5th Cir.1982).

■ In vacating its prior opinion in *Consolidated Motor Inns*, the Fifth Circuit followed the Tenth Circuit opinion in *Acme Tool Inc. v. Fletcher*, 309 F.2d 636 (10th Cir.1962), which states:

"The Bankruptcy Act provides that the discharge of a partnership does not discharge the individual general partner from the partnership debts." Id. at 637.

The Fifth Circuit further held that the debts of individual partners who did not file bankruptcy with regard to creditors who had opposed the partnership's plan of reorganization were not discharged by the partnership plan. Because the appellee opposed the Casey Wood plan of reorganization and appellants did not file for individual bankruptcy relief, the partnership discharge has no bearing on appellant's guaranty agreements.

## III.

Appellants contend the partnership's plan of reorganization constitutes satisfaction of the state court judgment entered

1. § 706.B provides: "The lien of any judgment when satisfied or *otherwise discharged* shall be released by the court upon written motion by the judgment debtor, ..." [E.A.]

against them under the provisions of 12 O.S. 706.B. As stated above, the discharge of partnership debt and the discharge of the individual partner's debt are not always co-existent. Oklahoma's statutory scheme provides separate treatment for 'actions against guarantors and actions against principal debtors.

A guarantor is liable immediately to the guarantee upon the default of the principal without demand or notice. 12 O.S.Supp.1983, § 706.B. Creditors do not have to join the principal debtor in an action against the guarantor or show that an effort was made to collect from the principal debtor. 12 O.S.1981, § 234. *Janeway v. Vandeventer,* 172 Okl. 379, 45 P.2d 79 (1935). The discharge of a partnership in bankruptcy does not prevent actions against members of the partnership unless they are individually involved in bankruptcy proceedings. *Ellet-Kendall Shoe Co. v. Miller,* 95 Okl. 270, 215 P. 417 (1923).

The claim filed by the FDIC against the appellants as individual guarantors is distinct from the partnership bankruptcy proceedings. The judgment rendered by the Bankruptcy Court must conform to the statutory interpretation of "satisfaction" if it is to be sufficient to grant a motion to release judgment. In state court, the FDIC received judgment for payment in accordance with the guaranty agreements. In *Continental Gin Co. v. Arnold,* 52 Okl. 569, 153 P. 160, this Court defined "payment" to be:

> "Generally understood as a discharge of the debt ... if the obligation calls for a money discharge, then there cannot be payment except by paying the full amount called for in money, or the representatives of money." Id. 153 P. at 162

### IV.

[5] Appellee alleges no payments have been received from the appellants in accordance with the state court judgment. Those payments received from the partnership are distinct. The partnership payments stem from the Bankruptcy Court's confirmed plan of reorganization which did not protect or discharge the appellant's individual guaranty agreements. As defined by Oklahoma law, the partnership's discharge does not constitute "payment" sufficient to release the state court's judgment as being satisfied.

JUDGMENT OF THE TRIAL COURT AFFIRMED.

HARGRAVE, V.C.J., and HODGES, LAVENDER, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs specially.

DOOLIN, C.J., dissents.

DOOLIN, Chief Justice, dissenting.

I dissent.

The opinion promulgated by the majority of the court overlooks the fundamental and far-reaching power of the bankruptcy court to cure defaults and the effect of such a cure in this case.

The Bankruptcy Code provides:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

\*　　\*　　\*　　\*　　\*　　\*

(5) provide adequate means for the plan's implementation, such as—

\*　　\*　　\*　　\*　　\*　　\*

(G) curing or waiving of any default; [1]

Under this and other provisions of the Code, the bankruptcy court is clearly vested with the power to cure all defaults.[2]

Both parties to the instant case agree that the guarantors' liability was invoked by the default of the partnership. I agree with the majority that the liability of general partners on a partnership debt is not discharged by a bankruptcy proceeding in which the partnership, but not the individual partners seek relief.[3] However, I would

---

**1.** 11 U.S.C.A. § 1123.

**2.** See: *In Re Masnorth Corp.,* 36 B.R. 335 (Bkrtcy.Ga.1984).

**3.** Rehearing of: *In the Matter of Consolidated Motor Inns,* 666 F.2d 189 (5th Cir.1982).

recognize the special power of the bankruptcy court to retroactively vacate a debtor's default; and since here there was a single debt, made by the partnership and guaranteed by the individual partners, without a default on that debt, no cause of action accrued on the guaranty agreements. Under the terms of the guaranties, the guarantors have no liability unless and until there has been a default. Therefore it is incorrect to speak in terms of joint liability for the debt because the event which would produce liability in the guarantors has, in effect, never occurred.

The majority opinion has the effect of permitting the creditor, FDIC, to receive payment of the underlying indebtedness from the partnership while at the same time pursuing the guarantors for payment of an undefaulted debt. Such an unfair result seems to me to be quite beyond the contemplation of the parties at the time they made and accepted the guaranties and quite outside the purpose and intent of the Bankruptcy Code. I would therefore REVERSE the judgment of the trial court.

ALMA WILSON, Justice, specially concurring:

I agree with both the majority opinion and the dissent that the general partners' liability on a partnership debt is not discharged by a bankruptcy proceeding in which the partnership but not the individual partners seek relief. I address issues not discussed in the majority opinion.

The dispositive issue in this case is whether or not the appellants are entitled to a release from a debt which has not yet been satisfied. I agree with the majority that they are not. The obligation has not been discharged, and under these facts the Oklahoma district court cannot declare the debt discharged where the debt has not been paid. (See definition of "payment" quoted in the majority opinion at p. 465 from *Continental Gin Co. v. Arnold*, 52 Okl. 569, 153 P. 160, 162 (1915)).

The curing of the default by the bankruptcy court is a completely different issue. The dissent states that the bankruptcy court is clearly vested with the power to cure all defaults. See Dissent, p. 465, citing 11 U.S.C. § 1123. However, such power is vested in the bankruptcy court as a method of providing relief for the entity filing bankruptcy. Section 1123 of the Bankruptcy Code addresses what shall be included in the Plan of Reorganization of a chapter 11 debtor and also what may be included in the Plan of Reorganization. The statute does not imply that curing the debtor's default removes the guarantors' obligation for the debt. If a default could be cured by the bankruptcy court for the benefit of a guarantor, the provisions of the Bankruptcy Code would operate as a protection for a party not seeking such relief from the bankruptcy court. It is not the intent of the Bankruptcy Code to provide relief to a party not seeking its protection. Bankruptcy court cases agree that the automatic stay provided by 11 U.S.C. § 362 as relief for a debtor/partnership in a chapter 11 reorganization does not apply to the general partners. *In re Landmark Air Fund II*, 19 B.R. 556 (Bankr.Ct.N.D. Ohio 1982), *In re Aboussie Brothers Construction Co.*, 8 B.R. 302 (Dist.Ct.E.D.Mo. 1981), and *In re Bank Center, Ltd.*, 15 B.R. 64 (Bankr.Ct.W.D.Penn.1981).

That Congress did not intend for the automatic stay to apply to the general partners of a debtor/partnership reorganizing under chapter 11 is clear from examining the Bankruptcy Code itself. In contrast, the Bankruptcy Code allows a stay of an action against a codebtor in a chapter 13 proceeding. (The purpose of a chapter 13 proceeding is to provide for the adjustment of debts of an individual with a regular income.) Title 11 U.S.C. § 1301 provides in pertinent part:

(a) Except as provided in subsection (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(2) the case is closed, dismissed, *or converted to a case under chapter 7 or 11 of this title.* [Emphasis added.]

One may conclude that in a case of consumer debt, Congress intended that codebtors be protected only under chapter 13, and not under chapter 7 or 11 of the Bankruptcy Code. By comparing chapters 11 and 13, we must conclude that Congress intended that codebtors not be protected by the automatic stay of § 362 of the Bankruptcy Code in chapter 11 cases.

Guarantors of debtors reorganizing under chapter 11 are not left without any protection. Title 11 U.S.C. § 509 allows for subrogation of the codebtor to the rights of the creditor to the extent that the codebtor has paid the creditor. In summary, Sections 509 and 1301 of the Bankruptcy Code along with the cases cited above, are strong arguments against the assertion that the debtor's Plan of Reorganization can cure a default to the benefit of a co-debtor.

This is not to say that a general partner of a debtor/partnership reorganizing under chapter 11 is always denied relief. In the case of *In re Bank Center, Ltd.*, 15 B.R. 64, 66 (Bankr.Ct.W.D.Penn.1981), the bankruptcy court after refusing to enjoin a creditor from collecting a judgment against the partners stated:

> It would be possible for the Debtor to show that actions against the partners would have a deleterious effect on the partnership, especially upon the partnership's ability to present a Plan. If such a showing is made an injunction may be requested. This request for a separate injunction should not be confused with the automatic stay, which the Debtor obtained by filing and subjecting itself to the Bankruptcy Court.

I conclude that if the partners in the case at bar believe that the FDIC's collection efforts against them would impair the Plan of Reorganization, then they may apply to the bankruptcy court for an injunction. In any event, this Court cannot reverse the trial court's denial of a motion for release and satisfaction of a judgment when the underlying debt has not been satisfied, even though the bankruptcy court has approved a Plan of Reorganization.

Finally, although the majority opinion does not specifically say so, I must presume that the appellants will receive credit against the judgment on the amounts paid by the debtor/partnership under the Plan of Reorganization. The FDIC is obviously not entitled to double recovery on the loans to the partnership.